Next case on the docket is 5-14-0072. Henry, The Interest of C.J.B. Counselor, you may proceed. May it please the court. Counselor. Counselor. My name is Andrew Flynn, and I represent the respondent, Helen Latoya McDaniel, in this matter. The respondent is the biological mother of the minor childhood issue in this case, and she's also the named respondent in Williamson County, Illinois, case number 2010-JA-19. The respondent was being held at the Jackson County, Illinois, jail on federal drug conspiracy charges when she gave birth to the minor child on June 22, 2010. The respondent spent the first 24 hours with the minor child before he was taken into protective custody based on some DCFS involvement with the respondent's previous children. The minor child was adjudicated in neglecting on September 16, 2010. On March 29, 2011, the respondent was transferred to a federal correctional institution in Waseca, Minnesota. In the meantime, various service plans were issued by the Illinois Department of Children and Family Services, which were utilized to determine whether or not the respondent had completed certain tasks in an effort to make reasonable progress towards the return of the minor child to her. As part of the service plans issued, the respondent was required to obtain mental health counseling, substance abuse counseling, hands-on parenting classes, employment, and suitable housing. Now, the respondent was able to complete a parenting class, attend substance abuse education, undergo drug testing, and became employed all while incarcerated. On February 1, 2012, the state filed a motion for termination of parental rights and for the appointment of a guardian with the power to consent to adoption. After various continuances, the matter was set for hearing on February 6, 2014. The respondent filed a motion to continue on January 23, 2014, in an effort to continue the matter to a later date when a new courtroom was opening in Williamson County that provided for new and up-to-date technology that would provide for video communication conferencing. The motion to continue was denied, and the evidence established that that new courtroom would have been open February 7, 2014, which is one day after the date the hearing was held. The respondent participated in the hearing via a speaker on her attorney's cell phone, and during the hearing, the federal institution where the respondent was being held required her to leave the hearing or get off the telephone. The hearing proceeded on without the presence of the respondent, either in person or via telephone. Now, after the hearing was over, the circuit court entered an order terminating the parental rights of the parent, and that brings us here today. Now, of the issue— I have one question. I thought I read something. What was the term of incarceration? Was it seven years or something like that? Was it changed? Initially, it was set, I believe, after 2018. In the middle of all this, she appealed her sentence and got it reduced. To what? I believe right now the absolute last date is January 15, 2015. Okay. But she has filed her documents for a halfway house on May 30th of this year, so it should be sometime between now and January. But that is not in the record. That's something— Oh, I thought it was in the record. Okay. No, but that's not—that's something I learned at some point. So, as we're here today, there are two issues that I would like to touch on. The first issue is whether the circuit court was correct in finding that the respondent was unfit pursuant to the relevant portion of the Elmwood Adoption Act. In this case, the state moved on the one specific section stating that an unfit person is one who fails to make reasonable progress for the return of the child within nine months after an adjudication of neglected or abused minor. So, in this case, the state of the court only focused on the first nine months after the adjudication. Of course, all nine months took place while the respondent was incarcerated, and the majority of that being while she was still in the Jackson County, Illinois, jail. She wasn't taken to her federal institution in Minnesota until March, which was about six months after the adjudication in the previous September. So, whether a parent has made reasonable progress towards the return of a child is measured objectively, but in light of all the relevant circumstances. In this case, the court found that the respondent had not made reasonable progress, solely because she had not completed the service plan that DCFS provided. Unfortunately, in this case, the service plan that was provided by DCFS was literally impossible for the respondent to complete. The possibility of fully completing the service plan is a relevant circumstance, but the circuit court did not consider that. As I mentioned previously, the service plan required the respondent to obtain mental health counseling, substance abuse counseling, a hands-on parenting class, employment, and suitable housing. Now, the respondent did not actually obtain a hands-on parenting class while incarcerated in Minnesota. However, she did take the only parenting class that was available to her while incarcerated. She could not find adequate housing while incarcerated. Who had the child at that time? I believe at that time he was placed with his maternal aunt. Was he still there with the foster? Yes, yes. Yes, Your Honor. So, even though she could not complete something, she did complete a parenting class, although not hands-on as required by DCFS. She didn't complete drug counseling, although not the same class approved by DCFS. She didn't even obtain employment. Did your client ever talk to her cousin? The testimony conflicted between whether or not she said she tried to contact every Wednesday, and then the cousin testified that there was little or no attempt at contact. We'll get into that in a little bit as to why my client wasn't able to counter that testimony. But my client holds the position that she tried to maintain contact on a weekly basis. So, basically what I was getting at, she did everything that was available to her, although she was incarcerated. Now, even though she did all these things, the state and the court held that this wasn't enough, that the respondent had not made reasonable progress. But in light of the reasonable, relevant circumstances of the case, reasonable progress, I believe, was made. There's an analogous case in ReFS, which is a First District case from 2001, a very similar case where the mother was incarcerated going through this process trying to complete a DCFS service plan. In that case, she was required to do drug treatment and parenting classes. She did drug treatment and parenting classes, but they weren't DCFS approved or the ones that DCFS specifically asked for. In that case, the circuit court, like here, said, you know, they commended her for her efforts, but said that's not part of your service plan, and they terminated her rights. On appeal, the appellate court reversed, saying that merely saying you have to follow DCFS's service plan to a T is kind of putting an administrative means over statutory ends, meaning we can't look following the exact letter of the service plan isn't going to be what's in the best interest of the child. They're looking at the relevant circumstances. In that case, she did whatever she could possibly do while incarcerated, and that was enough to reverse that circuit court's opinion. So just like the appellate court there, here the respondent did everything in her power to do. So I would submit to the court that in this case, if the respondent, what she accomplished is not reasonable progress, given the relevant circumstances, then what would be? She did everything she could possibly do, and it wasn't enough. So there's no dispute that there's no exceptions or the time isn't told for a person being incarcerated, but then why give them a service plan that's impossible for them to complete? There is no earthly way she could have completed the service plan as written by DCFS, but she still tried and did everything she could do within her power. Now, again, the circuit court's reasoning was solely based on the fact that she did not complete her service plan. Also, in the FS case I just mentioned, the court mentions that the failure to comply with the service plan remained relevant, but such failure alone could not overcome evidence of reasonable progress toward the correction of the condition that led to the removal of the child. So failure to complete the service plan alone cannot be the only factor, and in this case that was the court's factor for finding her unfit. Now, the second issue I'd like to touch on, which we briefly discussed with issues with the testimony, was whether or not the respondent's due process was violated during his hearing. Now, I mentioned that she participated on the telephone. In this case, although the law is clear that telephone participation is fine, the Williams County Courthouse opened the very next day a state-of-the-art courtroom with up-to-date video and communication technology. With the knowledge of this new courtroom, the respondent filed a motion to continue in an attempt to utilize that video and communication technology. The motion was denied, and the court held with reason that this had been continued long enough and they wanted to get it over with. But the very next day, the courtroom was available. There's no reasonable administrative burden this would have caused. Waiting a day or maybe a week or two would not have caused any realistic burden on anyone. Was Skype available on the federal penitentiary's end? In this case, Skype was not available, but they did offer another. I think they called it a video portal that was available. They said Skype was not available due to a lack of secure connection, but they had a video portal that would have been available, and the record reflects that the IT personnel at the Williams County Courthouse, as well as the federal institution, were communicating about that, but that was all removed when the motion to continue was denied. So in that case, the respondent sought an opportunity to be seen and heard, be able to view the evidence, be able to view the witness testimony, but that wasn't allowed. But even beyond that, the speakerphone utilized is not nearly sufficient to be deemed meaningful participation, and I guess I should back up a little bit. The law is clear that a termination of parental rights is obviously one of the most important things, the most valued rights that an individual has. And although there's not a requirement that the parent has to be there, if they do want to participate, they have to be given the opportunity to meaningfully participate. And in this case, the court ruled that the speaker telephone was sufficient. But if you look at the record, there are numerous times where the respondent states, what did he say, what did she say, what was that, over and over and over again. And there's even a few times where no one responds. They just continue on. So the speakerphone used, it was her attorney's speaker. It wasn't a courtroom setup. It was merely her cell phone that traveled around the courtroom. I would submit that that's not meaningful participation in any way. Was her attorney allowed to talk with her regarding what was going on during the course of the hearing? Yes, the judge did allow them to, if they had any issues, they were allowed to leave the courtroom and discuss off the record in private. Yes, that was allowed. But one of the biggest problems that occurred is about halfway through the hearing, her federal institution, no fault of the court, the federal institution required her to leave, get off the telephone. So at that time, the judge explained to her what was going on, that it wasn't his decision making her leave. She was still forced to leave the hearing. And that hearing continued on. Now there's another case that's exactly similar to this. Henry A.C. It's a third district case from 2005. Very similar scenario. The father in that case, going through termination of rights while incarcerated, was participating on the cell phone. It wasn't the institution that caused it, but there was just connection problems. And the phone communication stopped. The court immediately issued a continuance until he was able to rejoin the hearing. In this case, that didn't happen. When seeking meaningful participation, and the respondent wasn't even there, when a simple continuance, even to use obviously a video communication, but even to ensure that she was there via telephone, a continuance should have been had in that case. Did she ask for a continuance? The record is clear. Her and her attorney went out on a break, unrelated to the telephone communication, and the attorney came back and said that she had to leave. But there is no formal continuance requested. In A.C., there was no formal continuance requested. The judge, on his own, said we're going to continue this matter until he can come back and be a participant on this hearing. So overall, in this case, and in any termination of parental rights, the respondent deserves the right to be present if she wants to be, and if she is, to meaningfully participate. Unfortunately, I don't think that happened in this case. As such, we would pray that the court reverse the circuit court's decision, finding the respondent unfit, and alternatively, remand this hearing so that she may meaningfully participate. And I would welcome any questions that you may have at this time. By the way, the child was 4 1⁄2 years old at the time of the best interest? Was her? Yes, she was born in June of 2010, so 3 1⁄2. Oh, okay. 3 1⁄2. And this was her February of this year. So by the time that she's, if she is released from the halfway house, or is she, that would be 4 1⁄2? Approximately 4 1⁄2 years old. I have no questions. Thank you. Your Honors, Counsel, may it please the court, Kelly Stacey again appearing on behalf of the state. CJB was 3 years and 7 months old when his mother's parental rights were terminated. By this time, he was the fifth child born to and removed from the mother, respondent mother in this case. I thought she had parental rights in one child. It was only three of the four, she lost parental rights. The fourth, she still had parental rights? I believe there is an issue about... Do you know the age of that child? Right. Do you know the age? I do not know the age of that child. But I do know that five children were born and all five were removed from her care. I also know that throughout these proceedings, she was incarcerated and would not have been able to care for any of the children had they been placed with her. In this case, numerous grounds were alleged that the state elected to proceed only on the reasonable progress ground. No, keep going. And that reasonable progress is looked at in the first nine months following the adjudication. And reasonable progress encompasses a parent's reasonable progress to enable the trial court to return the child to the parent. If the parent is incarcerated, obviously the child cannot be placed with that parent and the respondent is still incarcerated to this day. So on appeal, the respondent argues that under her particular circumstances, the trial court should have found that her efforts that she made while in prison and in jail were reasonable for her circumstances. Reasonable efforts and reasonable progress, though, are two distinct bases for grounds of unfitness. The state did not elect to proceed on the reasonable efforts ground, so all of that is not really relevant to the determination by the trial court. As counsel indicated, the time a parent spends incarcerated is included in that nine-month time frame. And the state would acknowledge that the respondent completed a parenting class different than the FS case that counsel cited, though. In that FS case, what the appellate court found was DCFS didn't even bother to check out that alternate program to see if maybe it would have been suitable for purposes of the case on FS. In this case, we have specific testimony from DCFS that because the respondent had a documented history of anger management problems and inability to properly parent, they needed to see hands-on parenting, and the program the respondent participated in didn't allow that. And obviously, children wouldn't be able to go to a federal penitentiary to participate in that type of program. In addition, the respondent completed the drug education program, as counsel indicated. However, the issue on that isn't whether or not that was a suitable program. The issue is it was outside of that nine-month time frame. So because that was done while she was in Minnesota, that was not within the nine-month time frame and didn't have a bearing on the outcome of the case. In this case, the state waited two years from the date the petition to terminate was filed to actually holding the hearing. And when the court reviews the record, you'll see that many times there were continuances granted in this case. And in fact, the guardian ad litem in the state had even mentioned to the court that if the respondent would be successful on her appeal in the federal case, maybe she would be let out. And that's part of the reason why the case went on for two years without a hearing. There was communication between – I should point this out. During the course of the proceedings, the respondent, her health deteriorated. I believe she was diagnosed with MS. She was then moved from the Minnesota facility to Carlswell, Texas, to a specialized healthcare facility. And in that facility, she was not able to participate in the hearings in person. Now, her trial attorney did tell her – during the course of this case, she had three different attorneys. Her second attorney did inform her and also inform the court that if she kept asking for these continuances, there's a possibility she would be moved and would not be able to participate. So this wasn't something unforeseen. In addition, on the record, the respondent indicated that she agreed that the best way for her to participate in this particular case was through telephone communication. That was simply the best – that's at the top of the record at page 16. That was simply the best method available at this time. And counsel was also correct that there were discussions between the facility in Carlswell and the IT officer, the information technology officer at the courthouse. However, the Carlswell facility indicated they, under no circumstances, used Skype. They have to have a secure connection, and it just wasn't going to be available. And there's no indication in the record that on the date of that hearing, it was available. There had been promises made to the trial court judge, well, we think we're going to be set up with this technology, but as technology goes, it's not always reliable and it's not always done when you think it might be. What's important to note is that the respondent participated by phone throughout the entire fitness portion of the hearing. These cases go in two stages. They're bifurcated. In this case, because the facility indicated to the trial court, she's only going to be able to participate one day. They had both of those hearings set for the same day. There was communication between the attorney and the respondent mother throughout this. The judge did allow time for that kind of a conference. It was only after the judge had already found respondent unfit by clear and convincing evidence that that connection was severed. How many of your witnesses were there in the best interest phase? How many witnesses did she miss out on? I don't believe. Oh, as far as the witness, the best interest, I believe. You're saying she missed the best interest portion. She missed the best interest portion. My question is, how many witnesses did she miss out on? My recollection is there were two witnesses. One would have been the caseworker, and the other would have been the respondent mother's niece, who was the foster caretaker. By this time, the best interest hearing had started, and at the best interest determination, the focus shifts away from the parent and into what's best for the child. And it's true that the respondent mother can argue, you know, why couldn't you have waited one more day? Why couldn't you have waited one more week, one more year? The point is, two years had been put off until hearing this. Before this, did she have like three or four other children? She had. He was her fifth child, so, yes, she had four other children. And the first four, what happened? I'm not exactly sure. I don't believe the record is fully developed on exactly what happened to those four. I believe the counsel was the trial counsel, so I would defer to him maybe on rebuttal for that. But we do know they were not able to stay with the respondent mother throughout this case. In this case, on the best interest proceeding, the fact that the respondent mother was incarcerated limited her ability to participate in that proceeding. The record does reflect that as soon as that phone connection was severed, trial counsel did inform the court that she was given authority to question the caseworker and to make the closing argument. So it really isn't anything that the respondent raises today to say, you know, if I had just had that shot, this is what I would have raised. We don't have any of that here. But because of that incarceration that made her unable to be in person for that hearing, it's the same reason why the best interest of the child is to have that parental right severed and the child remain with Brandi Gillespie Davis, because the child deserves to have permanency. And when you're three years and seven months old, two years is a really long time to wait. So we would respectfully request you to affirm. Thank you. I'm just to clear up. Unfortunately, I was not the trial counsel, but based on the record, I believe it states that three of the four previous children had been terminated. The fourth child is vague. I'm not 100 percent sure, but the respondent has been incarcerated the entire time. I just wanted to touch base on a few things the counsel brought up in differentiating the case of Henry F.S. regarding completing some of the stuff outside of the nine months. Similar things happened in that case where the appellate court still considered stuff that had begun within the nine-month period and was finished subsequently. They still considered it. Further, in that case, the respondent in that case did not complete a psychological evaluation, which was required by the service plan, but the appellate court felt that the other things she had completed was sufficient. And regarding just her lack of participation in the best interest stage, she was still unable to actually hear her witnesses, hear their questions, hear their answers, maybe think of something new to testify herself. All of that was unavailable to her due to the lack of communication and the lack of a continuance to ensure that she was involved. I have no further comment. Thank you, counsel. Thank you. The court will stand in recess until the next doctor called. Whenever that is. Thank you. All rise.